UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
**F I L E D**

JUN 0 9 2005

AT PIKEVILLE
LESLIE G. WHITMER
CLERK, U.S. DISTRICT COURT

CIVIL ACTION NO. 04-323-GWU

GARY SMITH,                      PLAINTIFF,

VS.           **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

## INTRODUCTION

The plaintiff, Gary Smith, appeals from the negative administrative decision on his own application for Child's Disability Insurance Benefits. The case is before the Court on cross-motions for summary judgment.

## CHILD'S DISABILITY INSURANCE BENEFITS

An individual who becomes disabled as defined by 42 U.S.C. Section 423(d) before attaining the age of twenty-two, who is the dependent child of a person entitled to old age or disability insurance benefits or fully insured at the time of his/her death, and who is unmarried at the time of application, is entitled to the child's DIB benefits. 42 U.S.C. Section 402(d)(1).

These benefits employ the same disability standards as are used to determine disability in adults. 42 U.S.C. Section 423(d).

1

Smith

## ADULT'S SUPPLEMENTAL SECURITY INCOME

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work

2

> experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on

3

the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.

4

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then

5

an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan,

6

905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services,

## DISCUSSION

The administrative law judge (ALJ) found that Smith, who was nearly 25 years old at the time of the decision, suffered from "severe" back problems and depression. (Tr. 16). He determined, nevertheless, that the plaintiff was capable of performing significant numbers of light level jobs, as identified by a vocational expert (VE). (Tr. 16-17). Thus, benefits were denied. (Tr. 17).

The VE had been asked to take into account the following restrictions: (1) light level lifting capacity, (2) the ability to stand and/or walk for six hours total per workday, (3) the ability to sit for six hours per workday, (4) "moderate" restrictions

7

in daily living activities, (5) moderate limitations in the ability to maintain attention and concentration for extended periods, (6) moderate limitations in the ability to respond appropriately to changes in the work setting, and (7) a need to avoid significant public contact or close work with co-workers. (Tr. 228-229).

The plaintiff's only significant assertion regarding the physical factors in the hypothetical was that postural restrictions had not been considered. However, the recent consultative examiner discounted this factor (Tr. 109) and the medical reviewer assessing the plaintiff's physical functions did not mention any such limitation (Tr. 114).[1]

Of greater concern is the assessment of Smith's mental status. The ALJ relied on factors from the medical reviewers and the previous ALJ findings (Id.); as the Mountain Comprehensive Care Center (MCCC) records were not introduced until August, 2003 (Tr. 187), however, neither the current medical reviewers nor the previous ALJ saw the information and could not necessarily be used to outweigh a contrary opinion from a current treating source. The ALJ specifically stated that the MCCC records were "inconsistent with debilitating depression" (Tr. 14) but did not

---

[1]A more cogent argument could have been made regarding a sit-stand option mentioned by the past ALJ (Tr. 37), the current medical reviewer (Tr. 158) and the current ALJ (Tr. 16). However, not only was the recent consultative examiner's sitting/standing capacity assessment (Tr. 109) included in the hypothetical, but also it would appear that at least the clerical jobs identified recently were essentially the same as those previously identified under a sit-stand option (Tr. 15, 173-174). The plaintiff has advanced no argument that the jobs identified during the two applicable periods differed.

8

Smith

acknowledge the reference to the serious occupational impairment suggested by the GAF of 50[2] cited. (Tr. 191). Nonetheless, close scrutiny of the record reveals that this was the opinion of a psychiatric <u>nurse</u>, rather than the supervising psychiatrist who was a Dr. Ehtesham (Tr. 201, 202). Given the fact this was not a psychologist or psychiatrist, it was not a source whose opinion was potentially entitled to binding weight. Moreover, the same evaluation referred to the patient as <u>alert</u>, <u>attentive</u>, oriented, cooperative, with insight and judgment and appearing neatly groomed. (Tr. 190) (emphasis added).

For these reasons, as well as those cited in the defendant's brief, the decision will be affirmed.

This the ___8___ day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[2]Scores between 51 and 60 are consistent with "moderate . . . difficulty in social, occupational or school functioning", and scores between 50 and 51 are consistent with serious symptoms such as being unable to keep a job as per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.) (DSM-IV).

9